## HALSEY v. BIRD et al.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 286.

**1. FACTORS—POWER TO PLEDGE.**

A factor cannot pledge the goods consigned to him, as his own, for his individual debt, though he has an interest in the goods by reason of advances made thereon by him.

**2. SAME—CONVERSION.**

The hypothecation by a factor of the goods of his consignor, for his individual debt, which is in excess of his advances to and charges against the consignor, makes him bound to account to the consignor for the whole amount received on such hypothecation.

**3. SAME.**

A factor, who hypothecates the goods of his consignor for his own individual debt, thereby disposing not only of his own special interest therein, but also of the whole property, by use of the symbols of title, so that any surplus which might arise from the sale of the goods in excess of the amount necessary to recompense the factor for his advance, and to satisfy all charges against them, would go to others than the consignor, and not be available for remittance to the consignor in due course of business, is liable to the consignor for the value of the goods at the time he so disposed of them, free from charges made against the goods subsequent to the hypothecation, including commissions and charges on subsequent sales.

Brawley, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Virginia.

J. D. Horsley and John W. Daniel, for plaintiff in error.

F. S. Kirkpatrick, for defendant in error.

Before GOFF, Circuit, Judge, and MORRIS and BRAWLEY, District Judges.

GOFF, Circuit Judge. The facts which we deem it necessary to state, bearing on the questions raised by the pleadings and discussed by counsel, are as follows: Stephen P. Halsey, a tobacconist of Lynchburg, Va., shipped to Walter Bird, a commission merchant doing business in London, England, under the style of Walter Bird & Co., 1,148 tierces of Virginia leaf tobacco, the first shipment of the consignment being made on April 4, 1891, and the last on April 9, 1892. There had been other dealings between the parties, relating to certain shipments of tobacco in preceding years, and Halsey claimed that Bird was indebted to him in a considerable sum of money at the time the first shipment of the last consignment was made. Upon the new shipments, as on those previously made, Halsey drew drafts on Bird for such advances as were considered proper, and when the tobaccos had all been sold a controversy arose as to the final settlements, which resulted in the institution

of this suit by Bird against Halsey in the circuit court of the United States for the Western district of Virginia. This action is trespass on the case, in assumpsit. The defendant below, in addition to the general issue, pleaded specially, in substance, that the plaintiff below did not faithfully and diligently endeavor to sell the tobacco consigned to him, and did not sell the same for the best prices that could have been obtained, and did not honestly account for the proceeds of sales actually made, and that he wrongfully appropriated the tobacco to his own use, by hypothecating the same for his own debts. The defendant in his said pleas also set up a counterclaim against Bird for damages on account of the injuries complained of. On these pleas issue was joined, and the case was tried to a jury, which found for the plaintiff, on which finding the court below entered judgment against Halsey for $20,000, with interest thereon, and costs of suit. During the trial many exceptions were noted to the rulings of the court, and to the instructions as given and refused; but we do not find it necessary to consider all of them, as the disposition we make of the main questions involved will doubtless eliminate the others from the further proceedings herein that we find it our duty to direct.

The plaintiff in error claims that the court below erred in refusing to give to the jury the three following instructions asked for by his counsel:

"The court instructs the jury that if they believe from the evidence that Halsey consigned to Bird, for sale by him as a commission merchant, the tobacco in controversy, and that said Bird hypothecated the tobaccos of said Halsey to secure money borrowed by said Bird, without said Halsey's consent, such hypothecation was a conversion by Bird of Halsey's tobacco to his own use, and he was immediately upon such conversion liable to said Halsey for the value of said tobacco at the time of the conversion; and, further, that the right of a commission merchant to assign a debt due to him by his principal is different in law from the hypothecation of his principal's goods to secure the commission merchant's debts, and the court is now dealing with hypothecation by a commission merchant without transferring the debt due him for advances."

"If the jury believe from the evidence that the plaintiff Walter Bird wrongfully hypothecated the tobaccos of S. P. Halsey for a debt of his own, and that such debt was in excess of his advances and charges to Halsey, he is bound to account for the whole amount received upon such hypothecation, and must be taken to have sold the tobaccos for such amounts; and he cannot recover in this action without first accounting to Halsey respecting such hypothecation, and accounting for the whole amount received thereon."

"If the jury believe from the evidence that Walter Bird, in hypothecating the tobaccos of Halsey, disposed not only of his own special interest therein, but disposed also of the entire property therein, by use of the symbols of title, and that any surplus which might arise from the sales of said tobaccos over and above the amount necessary to discharge in full the advances made thereon by Bird, and all charges made against it, would go to others than the consignor, and not be available for remittance to Halsey in due course of business, then and in that event the jury should regard the transaction as the conversion of said tobacco to his own use by Bird, and treat it as then fairly disposed of, as between Halsey and himself; and, if the jury so believe from the evidence, Bird is liable to Halsey for the value of said tobaccos at the time he so disposed of them. All charges made against the tobaccos subsequent to the times of hypothecation must be stricken from the account against Halsey, including commissions and charges upon the subsequent sales. of tobacco by either Bird or the bank or its agents."

The court below refused to give these instructions as asked for, but in lieu thereof gave the following:

"The court instructs the jury that if they believe from the evidence that Halsey consigned to Bird, for sale by him as a commission merchant, the tobaccos in controversy, and that said Bird had no interest in said tobacco by reason of advances made by him to Halsey, and that said Bird hypothecated the tobacco of said Halsey to secure money borrowed by said Bird, without said Halsey's consent, then such hypothecation was a conversion by Bird of Halsey's tobacco to his own use, and Bird was immediately upon such conversion liable to said Halsey for the value of said tobacco at the time of conversion."

"When one consigns goods to his agent for sale, the agent has no right to pledge the goods, and, if he pledges them, it is an unlawful abuse of his position as agent, and the act of pledging amounts to a conversion. But when one consigns goods to his agent, and then draws on those goods in the hands of his agent, who advances the money by cashing the draft, the simple relation of agent and consignor becomes changed, and the agent becomes both agent and creditor of his principal, and he has an interest in the goods in common with his principal. The consignor is the legal owner. The agent has a qualified ownership by reason of his advances. This being so, if the agent pledges the goods, he has a right to pledge them to the extent of his advances. If these advances equal the value of the goods, then his principal suffers no harm. If the advances be less than the value of the goods, then, to the extent of the difference between the value of the goods and the amount of the advances, the principal may be injured, unless the agent make good to him the amount of such difference. The agent, then, if he has made advances, having a qualified interest in the goods, to that extent can hypothecate them; and if the goods be hypothecated, and during the hypothecation be sold at their market value, and if the proceeds are applied towards the payment of the advances, the principal cannot complain. The bare fact of hypothecation, if it brings no loss to the principal, cannot create a liability on the part of the agent."

The instructions, as presented to the court below by counsel for defendant, were intended to present to the jury the law relating to commission merchants and consignors, as that law was found to be applicable to the facts before them. Did the court below err in refusing the said instructions as they were offered, and also in giving them as amended? We think so, for the following reasons:

A commission merchant has no right to use the goods of his consignor as if they were his own, and he cannot alienate them in the adjustment of his own personal debts, unconnected with his advances and charges on them. No statute that we are aware of gives him such a right, commercial customs do not sanction it, and the common law forbids it. The consignor places his goods in the hands of the factor to be sold, and the latter exceeds his authority when he hypothecates or pledges them for advances he has made thereon; and this is so even in cases where the consignor has drawn upon the factor in anticipation of the sale. If the factor pledges the goods as his own, he by such act appropriates them to his own use, and renders himself liable for their value as of the date when the pledge is made. The factor may transfer his lien on the goods existing by virtue of the advances made by him to the consignor, and also for proper charges due to him on the same; but this must be done under certain conditions and limitations, with express notice of the lien to the party to whom the goods are delivered, and with the right on the part of the factor to retake them into his custody at any time he may desire to do so, or when he may be instructed to sell them. It has long been the

doctrine of the common law that a factor cannot pledge as security for the payment of his individual debt the goods consigned to him for sale. It has been uniformly so held in the courts of England, except where by act of parliament the rule has been changed or modified, and it is the law in the United States where special legislation has not made a change. To pledge the goods of the principal is not within the factor's power, and, if he attempts it, his act is tortious and void. Edw. Bailm. p. 117; Story, Ag. § 113; 2 Kent, Comm. p. 626; Paterson v. Tash, 2 Strange, 1178; Graham v. Dyster, 2 Starkie, 20; McCombie v. Davies, 6 East, 540, 7 East, 5; Queiroz v. Trueman, 3 Barn. & C. 342; Brown v. McGran, 14 Pet. 479, 10 L. Ed. 550; Warner v. Martin, 11 How. 208, 13 L. Ed. 667; Benny v. Rhodes, 18 Mo. 147; Allen v. Bank, 120 U. S. 20, 7 Sup. Ct. 460, 30 L. Ed. 573.

A factor will not be permitted to deliver the goods of his principal in satisfaction of his own debt, nor to pledge them as security for his individual debts, so as to pass the title thereto; and such conduct on the part of the factor amounts to the conversion of the goods to his own use, and renders him liable to his consignor for the value of the same at the time of such conversion. In order to pass the title to the goods, they must be sold according to the usages of the trade; and, if sold in an irregular way, the title will not pass, even if the factor should have a lien on them for advances made by him. Benny v. Rhodes, 18 Mo. 147; Same v. Pegram, Id., 191; Bott v. McCoy, 20 Ala. 578; Bigelow v. Walker, 24 Vt. 149; Bowie v. Napier, 1 McCord, 1.

The fact that the defendant in error had an interest in the tobaccos, by reason of advances made thereon by him, did not authorize him to pledge the same for his individual debts; and, therefore, if he hypothecated said tobaccos for the purpose of securing money borrowed by him individually, such hypothecation amounted to their conversion, and rendered him liable to the consignor for their value at the time of such conversion. Under such circumstances a factor's interest is only a qualified one; consisting of a lien upon the goods consigned to him, for the amount of the charges due thereon, and also for the advances made by him concerning the same. If the factor, having such lien, transfers it for purposes of his own, any surplus that may remain after discharging such lien from the proceeds of sale is clearly the property of the consignor. The instructions referred to, propounded by the defendant below, properly stated the law applicable to the facts of this case as the same were presented to the jury, and should have been given, in substance, at least, as asked for.

The other assignments of error do not impress us as important, as they exist only because of questions not now likely to arise under the law that will be then applicable when the case is again tried. The judgment complained of will be reversed, and this case will be remanded, with instructions to grant the plaintiff in error a new trial.

BRAWLEY, District Judge, dissents.